CSM LEGAL, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
GONZALO TORIBIO ESTEBAN, JAIME
BASURTO DE LA CRUZ, MARCOS
OLIVER AGUILAR, VALENTIN APARICIO
(A.K.A LUIS CASTILLO), JOSE JUAREZ
TIBURCIO, and RAFAEL BASURTO DE LA
CRUZ, *individually and on behalf of others
similarly situated,*

|  |  |
|---|---|
| | **COMPLAINT** |
| *Plaintiffs*, | |
| | **COLLECTIVE ACTION UNDER** |
| | **29 U.S.C. § 216(b)** |
| -against- | |
| | **ECF Case** |
| TAIKAI INC (D/B/A MOMOYA), KWANG | |
| HO LEE, and JENNIFER LEE, | |
| | |
| *Defendants.* | |

-------------------------------------------------------X

Plaintiffs Gonzalo Toribio Esteban, Jaime Basurto De La Cruz, Marcos Oliver Aguilar,

Valentin Aparicio (a.k.a Luis Castillo), Jose Juarez Tiburcio, and Rafael Basurto De La Cruz,

individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through

their attorneys, CSM Legal, P.C., upon their knowledge and belief, and as against Taikai Inc (d/b/a

Momoya), ("Defendant Corporation"), Kwang Ho Lee and Jennifer Lee, ("Individual

Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are both current and former employees of Defendants Taikai Inc (d/b/a

Momoya), Kwang Ho Lee, and Jennifer Lee.

2.      Defendants own, operate, or control a sushi restaurant, located at 427 Amsterdam Avenue, New York, NY 10024 under the name "Momoya".

3.      Upon information and belief, individual Defendants Kwang Ho Lee and Jennifer Lee, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiff Aparicio, Plaintiff Basurto, Plaintiff Aguilar, Plaintiff Tiburcio, and Plaintiff Esteban, have been employed as delivery workers, cooks, and food preparers at the restaurant located at 427 Amsterdam Avenue, New York, NY 10024.

5.      Plaintiff Aparicio, Plaintiff De La Cruz, Plaintiff Aguilar, Plaintiff Tiburcio, and Plaintiff Esteban have ostensibly been employed as delivery workers. However, they have been required to spend a considerable part of their work day performing non-tipped duties, including but not limited to cooks, and food preparers (hereafter the "non-tipped duties").

6.      Plaintiff Basurto was employed as a delivery worker and food preparer located at 427 Amsterdam Avenue, New York, NY 10024.

7.      At all times relevant to this Complaint, Plaintiffs have worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they have worked.

8.      Rather, Defendants have failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

9.      Further, Defendants have failed to pay Plaintiffs the required "spread of hours" pay for any day in which they have had to work over 10 hours a day.

10.     Defendants have employed and accounted for Plaintiffs Aparicio, Plaintiff Basurto, Plaintiff Aguilar, Plaintiff Tiburcio, Plaintiff Esteban as delivery workers in their payroll, but in actuality their duties have required a significant amount of time spent performing the non-tipped duties alleged above.

11.     Regardless, at all relevant times, Defendants have paid Plaintiffs at a rate that is lower than the required tip-credit rate.

12.     However, under both the FLSA and NYLL, Defendants are not entitled to take a tip credit because Plaintiffs' non-tipped duties have exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants have employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This has allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and has enabled them to pay them at the tip-credit rate (which they still have failed to do).

14.     Defendants' conduct has extended beyond Plaintiffs to all other similarly situated employees.

15.     At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York

Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a sushi restaurant located in this district. Further, Plaintiffs have been employed by Defendants in this district.

## PARTIES

*Plaintiffs*

20.    Plaintiff Gonzalo Toribio Esteban ("Plaintiff Toribio" or "Mr. Toribio") is an adult individual residing in New York County, New York.

21.    Plaintiff Toribio was employed by Defendants at Momoya from approximately May 2018 until on or about Mid-January 2024.

22.    Plaintiff Jaime Basurto De La Cruz ("Plaintiff Basurto" or "Mr. Basurto") is an adult individual residing in New York County, New York.

23.    Plaintiff Basurto was employed by Defendants at Momoya from approximately July 2019 until on or about December 1, 2022.

24.    Plaintiff Marcos Oliver Aguilar ("Plaintiff Aguilar" or "Mr. Aguilar") is an adult individual residing in Queens County, New York.

25.    Plaintiff Aguilar was employed by Defendants at Momoya from approximately 2013 until on or about Mid-January 2024.

26.    Plaintiff Valentin Aparicio (a.k.a Luis Castillo) ("Plaintiff Aparicio" or "Mr. Aparicio") is an adult individual residing in Queens County, New York.

27.    Plaintiff Aparicio was employed by Defendants at Momoya from approximately 2010 until on or about January 28, 2024.

28.    Plaintiff Jose Juarez Tiburcio ("Plaintiff Juarez" or "Mr. Juarez") is an adult individual residing in New York County, New York.

29.    Plaintiff Juarez was employed by Defendants at Momoya from approximately 2015 until on or Mid-January 2024.

30.    Plaintiff Rafael Basurto De La Cruz ("Plaintiff De La Cruz" or "Mr. De La Cruz") is an adult individual residing in New York County, New York.

31.    Plaintiff De La Cruz was employed by Defendants at Momoya from approximately 2016 until on or Mid-January 2024.

*Defendants*

32.    At all relevant times, Defendants own, operate, or control a sushi restaurant, located at 427 Amsterdam Avenue, New York, NY 10024, under the name "Momoya".

33.     Upon information and belief, Taikai Inc (d/b/a Momoya) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 427 Amsterdam Avenue, New York, NY 10024.

34.     Defendant Kwang Ho Lee is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Kwang Ho Lee is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Kwang Ho Lee possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

35.     Defendant Jennifer Lee is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jennifer Lee is sued individually in her capacity as a manager of Defendant Corporation. Defendant Jennifer Lee possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

36.     Defendants operate a sushi restaurant located in a neighborhood in Manhattan.

37.    Individual Defendants, Kwang Ho Lee and Jennifer Lee, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

38.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

39.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

40.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

41.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

42.    Upon information and belief, Individual Defendant Kwang Ho Lee operates Defendant Corporation as either an alter ego of himself and/or failed to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

a)   failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)   defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)   transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for his own benefit as the sole or majority shareholder,

e) operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

f) intermingling assets and debts of his own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

43. At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants have had the power to hire and fire Plaintiffs, have controlled the terms and conditions of employment, and have determined the rate and method of any compensation in exchange for Plaintiffs' services.

44. From 2019 to 2024, Defendants have, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

45. In addition, upon information and belief, Defendants and/or their enterprise have been directly engaged in interstate commerce. As an example, numerous items that are used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

46. Plaintiffs are former employees of Defendants who ostensibly have been employed as delivery workers, cooks, and food preparers.

47. However, they have spent over 20% of each shift performing the non-tipped duties described above.

48.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Gonzalo Toribio Esteban*

49.     Plaintiff Toribio was employed by Defendants from approximately May 2018 until on or about Mid-January 2024.

50.     Defendants ostensibly employed Plaintiff Toribio as a delivery worker.

51.     However, Plaintiff Toribio was also required to spend a significant portion of his work day performing the non-tipped duties described above.

52.     Although Plaintiff Toribio ostensibly was employed as a delivery worker, cook, and preparer, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

53.     Plaintiff Toribio regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

54.     Plaintiff Toribio's work duties required neither discretion nor independent judgment.

55.     Throughout his employment with Defendants, Plaintiff Toribio regularly worked in excess of 40 hours per week.

56.     From approximately 2019 until on or about January 2022, Plaintiff Toribio worked approximately 50 hours per week, 6 days a week.

57.     From approximately January 2022 until on or about September 2022, Plaintiff Toribio worked approximately 50 to 53 hours per week, 6 days a week.

58.     From approximately October 2022 until on or about November 2022, Plaintiff Toribio worked approximately 52.55 hours per week, 5 days a week. During this time period, Plaintiff Toribio worked more than 10 hours per day, 5 days a week.

59.     From approximately December 2022 until on or about January 15, 2024, Plaintiff Toribio worked from approximately18 to 23 hours per week, 5 days a week.

60.     Throughout his employment, Defendants paid Plaintiff Toribio his wages by check.

61.     From approximately January 2019 until on or about September 2022, Defendants paid Plaintiff Toribio $10.00 per hour for 40 hours, and between $15.00 and $16.65 per hour for the remaining hours worked.

62.     From approximately October 2022 until on or about November 2022, Defendants paid Plaintiff Toribio $19.00 per hour for 40 hours, $28.50 per hour for approximately 8.55 hours, and $15.00 per hour for approximately 4 hours.

63.     From approximately December 2022 until on or about January 15, 2024, Defendants paid Plaintiff Toribio $10.00 per hour for all hours worked.

64.     Plaintiff Toribio was never notified by Defendants that his tips were being included as an offset for wages.

65.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Toribio's wages.

66.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Toribio regarding overtime and wages under the FLSA and NYLL.

67.     Defendants did not provide Plaintiff Toribio an accurate statement of wages, as required by NYLL 195(3).

68.     In fact, Defendants adjusted Plaintiff Toribio's paystubs so that they reflected inaccurate wages and hours worked.

69.    Defendants did not give any notice to Plaintiff Toribio, in English and in Spanish (Plaintiff Toribio's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

70.    As a result of Defendants' failure to provide Plaintiff Toribio with a Notice of Pay Rate or accurate wage statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

71.    Defendants required Plaintiff Toribio to purchase "tools of the trade" with his own funds—including an electric bicycle and a battery.

*Plaintiff Jaime Basurto De La Cruz*

72.    Plaintiff Basurto was employed by Defendants from approximately July 2019 until on or about December 1, 2022.

73.    Defendants employed Plaintiff Basurto as a delivery worker and approximately in February 2022 Plaintiff Basurto was also employed as a food preparer.

74.    Plaintiff Basurto regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

75.    Plaintiff Basurto's work duties required neither discretion nor independent judgment.

76.    From approximately July 2019, until on or about January 2022, Plaintiff Basurto worked as a delivery worker for approximately 29 hours per week, 5 days a week.

77.    From approximately February 2022, until on or about December 1, 2022, Plaintiff Basurto worked 5 hours per week as a food preparer, and 24 hours per week as a delivery worker, 5 days a week (approximately 29 hours per week).

78.    Throughout his employment, Defendants paid Plaintiff Basurto his wages by check.

79.     From approximately July 2019 until on or about January 2022, Defendants paid Plaintiff Basurto $10.00 per hour for all hours worked.

80.     From approximately February 2022 until on or about December 1, 2022, Defendants paid Plaintiff Basurto $10.00 per hour, when he worked as a delivery worker, and $15 per hour, when he worked as a food preparer.

81.     Defendants never granted Plaintiff Basurto any breaks or meal periods of any kind.

82.     Plaintiff Basurto was never notified by Defendants that his tips were being included as an offset for wages.

83.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Basurto's wages.

84.     Although Plaintiff Basurto was required to keep track of his time, on multiple occasions the punching machine was not functioning properly.

85.     On a number of occasions, Defendants required Plaintiff Basurto to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

86.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Basurto regarding overtime and wages under the FLSA and NYLL.

87.     Defendants did not provide Plaintiff Basurto an accurate statement of wages, as required by NYLL 195(3).

88.     In fact, Defendants adjusted Plaintiff Basurto's paystubs so that they reflected inaccurate wages and hours worked.

89.     Defendants did not give any notice to Plaintiff Basurto, in English and in Spanish (Plaintiff Basurto's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

90.     As a result of Defendants' failure to provide Plaintiff Basurto with a Notice of Pay Rate or accurate wage statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

91.     Defendants required Plaintiff Basurto to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, and gloves.

*Plaintiff Marcos Oliver Aguilar*

92.     Plaintiff Aguilar was employed by Defendants from approximately 2013 until on or about Mid-January 2024.

93.     Defendants ostensibly employed Plaintiff Aguilar as a delivery worker.

94.     However, Plaintiff Aguilar was also required to spend a significant portion of his work day performing the non-tipped duties described above.

95.     Although Plaintiff Aguilar ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

96.     Plaintiff Aguilar regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

97.     Plaintiff Aguilar's work duties required neither discretion nor independent judgment.

98.     From approximately 2019 until on or about March 2020, Plaintiff Aguilar worked approximately 22.50 to 27 hours per week, 5 to 6 days a week

99.     From approximately March 26, 2020, until on or about May 7, 2020, Plaintiff Aguila did not work for Defendants.

100.    From approximately May 8, 2020, until on or about the Mid-January 2024, Plaintiff Aguilar worked approximately 22.50 to 27 hours per week, 5 to 6 days a week.

101.    Throughout his employment, Defendants paid Plaintiff Aguilar his wages by check.

102.    From approximately 2019 until on or about 2022, Defendants paid Plaintiff Aguilar $10.00 per hour for all his hours worked.

103.    From approximately 2023 until on or about Mid-January 2024, Defendants paid Plaintiff Aguilar $15.00 per hour for 5 hours, and $10.00 per hour for the remaining hours worked.

104.    Defendants never granted Plaintiff Aguilar any breaks or meal periods of any kind.

105.    Plaintiff Aguilar was never notified by Defendants that his tips were being included as an offset for wages.

106.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Aguilar's wages.

107.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Aguilar regarding overtime and wages under the FLSA and NYLL.

108.    Defendants did not provide Plaintiff Aguilar an accurate statement of wages, as required by NYLL 195(3).

109.    In fact, Defendants adjusted Plaintiff Aguilar's paystubs so that they reflected inaccurate wages and hours worked.

110.    Defendants did not give any notice to Plaintiff Aguilar, in English and in Spanish (Plaintiff Aguilar's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

111.    As a result of Defendants' failure to provide Plaintiff Aguilar with a Notice of Pay Rate or accurate wage statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

112.    Defendants required Plaintiff Aguilar to purchase "tools of the trade" with his own funds—including two electric bicycles, a helmet, and a vest.

*Plaintiff Valentin Aparicio (a.k.a Luis Castillo)*

113.    Plaintiff Aparicio was employed by Defendants from approximately 2010 until on or about January 28, 2024.

114.    Defendants ostensibly employed Plaintiff Aparicio as a delivery worker.

115.    However, Plaintiff Aparicio was also required to spend a significant portion of his work day performing the non-tipped duties described above.

116.    Although Plaintiff Aparicio ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

117.    Plaintiff Aparicio regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

118.    Plaintiff Aparicio's work duties required neither discretion nor independent judgment.

119.    From approximately 2019 until on or about January 28, 2024, Plaintiff Aparicio worked approximately 19 to 35 hours per week, 6 days a week.

120.    Throughout his employment, Defendants paid Plaintiff Aparicio his wages by check.

121.    From approximately 2019 until on or about January 2022, Defendants paid Plaintiff Aparicio $10.00 per hour for all hours worked.

122.    From approximately February 2022 until on or about August 2022, Defendants paid Plaintiff Aparicio $15.00 per hour for 5 hours, and $10.00 per hour for the remaining hours worked.

123.    From approximately September 2022 until on or about January 28, 2024, Defendants paid Plaintiff Aparicio $15.00 per hour for 10 hours, and $10.00 per hour for the remaining hours worked.

124.    Defendants never granted Plaintiff Aparicio any breaks or meal periods of any kind.

125.    Plaintiff Aparicio was never notified by Defendants that his tips were being included as an offset for wages.

126.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Aparicio's wages.

127.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Aparicio regarding overtime and wages under the FLSA and NYLL.

128.    Defendants did not provide Plaintiff Aparicio an accurate statement of wages, as required by NYLL 195(3).

129.    Defendants did not give any notice to Plaintiff Aparicio, in English and in Spanish (Plaintiff Aparicio's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

130.    As a result of Defendants' failure to provide Plaintiff Aparicio with a Notice of Pay Rate or accurate wage statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

131.    Defendants required Plaintiff Aparicio to purchase "tools of the trade" with his own funds—including one electric bicycle and a vest.

*Plaintiff Jose Juarez Tiburcio*

132.    Plaintiff Juarez was employed by Defendants from approximately 2015 until on or about Mid-January 2024.

133.    Defendants ostensibly employed Plaintiff Juarez as a delivery worker.

134.    However, Plaintiff Juarez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

135.    Although Plaintiff Juarez was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

136.    Plaintiff Juarez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

137.    Plaintiff Juarez's work duties required neither discretion nor independent judgment.

138.    From approximately 2019 until on or about March 2020, Plaintiff Juarez worked approximately 25 to 26 hours per week, 5 days a week.

139.    From approximately March 2020 until Mid-January 2024, Plaintiff Juarez has worked approximately 25 hours per week, 5 days a week.

140.    Throughout his employment, Defendants paid Plaintiff Juarez his wages by check.

141.    From approximately 2019 until on or about January 2023, Defendants paid Plaintiff Juarez $10.00 per hour for all hours worked.

142.    From approximately February 2023 until on or about Mid-January 2024, Defendants paid Plaintiff Juarez $10.00 per hour for 20 hours, and $15.00 per hour for 5 hours.

143.    Defendants never granted Plaintiff Juarez any breaks or meal periods of any kind.

144.    Plaintiff Juarez was never notified by Defendants that his tips were being included as an offset for wages.

145.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Juarez's wages.

146.    On a number of occasions, Defendants required Plaintiff Juarez to sign a document, the contents of which he was not allowed to review in detail.

147.    No notification, either in the form of posted notices or other means, was ever been given to Plaintiff Juarez regarding overtime and wages under the FLSA and NYLL.

148.    Defendants never provided Plaintiff Juarez an accurate statement of wages, as required by NYLL 195(3).

149.    Defendants did not provide any notice to Plaintiff Juarez, in English and in Spanish (Plaintiff Juarez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

150.    As a result of Defendants' failure to provide Plaintiff Juarez with a Notice of Pay Rate or accurate wage statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

151.    Defendants required Plaintiff Juarez to purchase "tools of the trade" with his own funds—including one electronic bicycle.

*Plaintiff Rafael Basurto De La Cruz*

152.    Plaintiff De La Cruz was employed by Defendants from approximately 2016 until on or Mid-January 2024.

153.    Defendants have ostensibly employed Plaintiff Basurto De La Cruz as a delivery worker.

154.    However, Plaintiff De La Cruz was also required to spend a significant portion of his work day performing the non-tipped duties described above.

155.    Although Plaintiff De La Cruz was ostensibly employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

156.    Plaintiff De La Cruz regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

157.    Plaintiff De La Cruz's work duties required neither discretion nor independent judgment.

158.    Throughout his employment with Defendants, Plaintiff De La Cruz regularly worked in excess of 40 hours per week.

159.    From approximately 2019 until early March 2020, Plaintiff De La Cruz worked approximately 43.77 to 50 hours per week, 6 days a week.

160.    From approximately April 2020 until early October 2020, Plaintiff De La Cruz worked approximately 60 hours per week, 6 days a week

161.    From approximately November 2020 until on or about Mid-January 2024, Plaintiff De La Cruz worked approximately 43.77 to 47 hours per week, 6 days a week.

162.    Throughout his employment, Defendants paid Plaintiff De La Cruz his wages by check.

163.    From approximately 2019 until Md-January 2024, Defendants paid Plaintiff De La Cruz $10.00 per hour for 40 hours and between $15.55 to $16.25 per hour for approximately 1 to 7 hours of overtime hours worked.

164.    Defendants never granted Plaintiff De La Cruz any breaks or meal periods of any kind.

165.    Plaintiff De La Cruz was never notified by Defendants that his tips were being included as an offset for wages.

166.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff De La Cruz's wages.

167.    Although Plaintiff De La Cruz was required to keep track of his time, Defendants required him to punch out and keep working for an extra thirty minutes to an hour past his scheduled shift.

168.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff De La Cruz regarding overtime and wages under the FLSA and NYLL.

169.    Defendants did not provide Plaintiff De La Cruz an accurate statement of wages, as required by NYLL 195(3).

170.    In fact, Defendants adjusted Plaintiff De La Cruz's paystubs so that they reflected inaccurate wages and hours worked.

171.    Defendants did not give any notice to Plaintiff De La Cruz, in English and in Spanish (Plaintiff De La Cruz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

172.    As a result of Defendants' failure to provide Plaintiff De La Cruz with a Notice of Pay Rate or accurate wage statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

173.    Defendants required Plaintiff De La Cruz to purchase "tools of the trade" with his own funds—including one electronic bicycle and one regular bicycle.

*Defendants' General Employment Practices*

174.    At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

175.    Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they have been owed for the hours they have worked.

176.    Defendants' pay practices have resulted in Plaintiffs not receiving payment for all their hours worked, and have resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

177.    Defendants have required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

178.    These Plaintiffs and all similarly situated employees, have ostensibly been employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

179.    The Plaintiffs' duties have not been incidental to their occupation as tipped workers, but instead have constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

180.    These Plaintiffs and all other tipped workers have been paid at a rate that is lower than the lower tip-credit rate by Defendants.

181.    However, under state law, Defendants are not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceed 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

182.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

183.    In violation of federal and state law as codified above, Defendants have classified these Plaintiffs and other tipped workers as tipped employees, and have paid them at a rate that is lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

184.    Defendants have failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

185.    Defendants have failed to inform Plaintiffs who received tips, that their tips are being credited towards the payment of the minimum wage.

186.    Defendants have failed to maintain a record of tips earned by Plaintiffs who have worked as delivery workers for the tips they received. Defendants' time keeping system has not reflect the actual hours that Plaintiff Toribio worked.

187.    Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

188.    On a number of occasions, Defendants have required Plaintiffs to sign a document the contents of which they have not been allowed to review in detail. Defendants have failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

189.    Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

190.    Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

191.    Defendants' unlawful conduct is intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

192.    Defendants have failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

193.    Defendants have failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of

the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

194.    As a result of Defendants' failure to provide Plaintiffs and other employees a Notice of Pay Rate or accurate wage statements with each payment of their wages, Plaintiffs and other employees were prevented from: (i) comparing their rate of pay to their hours worked; (ii) realizing that they were underpaid; and (iii) advocating for themselves and/or taking appropriate action to obtain the payments due to them.

## FLSA COLLECTIVE ACTION CLAIMS

195.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

196.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

197.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

198.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

199.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants have had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

200.    At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

201.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

202.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

203.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

204.    Plaintiffs (and the FLSA Class members) have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

205.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

206.    Defendants, in violation of 29 U.S.C. § 207(a)(1), have failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

207.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation has been willful within the meaning of 29 U.S.C. § 255(a).

208.    Plaintiffs (and the FLSA Class members) have been damaged in an amount to be determined at trial.

<u>**THIRD CAUSE OF ACTION**</u>

**VIOLATION OF THE NEW YORK MINIMUM WAGE ACT**

209.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

210.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants have had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

211.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs less than the minimum wage.

212.    Defendants' failure to pay Plaintiffs the minimum wage is willful within the meaning of N.Y. Lab. Law § 663.

213.    Plaintiffs have been damaged in an amount to be determined at trial.

<u>**FOURTH CAUSE OF ACTION**</u>

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

214.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

215.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, have failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

216.    Defendants' failure to pay Plaintiffs overtime compensation is willful within the meaning of N.Y. Lab. Law § 663.

217.    Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

218.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

219.    Defendants have failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours has exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

220.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours is willful within the meaning of NYLL § 663.

221.    Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

222.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

223.    Defendants have failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether

paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

224.    As a result of Defendants' failure to furnish an accurate wage notice to Plaintiffs, Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL §195.

225.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

226.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

227.    With each payment of wages, Defendants have failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

228.    As a result of Defendants' failure to furnish accurate statements to Plaintiffs, Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

229.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

230.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

231.    Defendants have required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

232.    Plaintiffs have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA are willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)    Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)    Declaring that Defendants have violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)    Declaring that Defendants have violated the notice and recordkeeping requirements

of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order are willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

February 17, 2025

CSM LEGAL, P.C

By:        /s/ Catalina Sojo, Esq.
Catalina Sojo [CS-5779517]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# CSM Legal, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———————

catalina@csmlegal.com

December 12, 2023

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Gonzalo Toribio Esteban

Legal Representative / Abogado:        CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                           12 de Diciembre 2023

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.
### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

December 1, 2023

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jaime de la Cruz Basurto

Legal Representative / Abogado:    CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                     1 de diciembre 2023

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

catalina@csmlegal.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

BY HAND

December 12, 2023

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                  Jose Juarez Tiburcio

Legal Representative / Abogado:   CSM Legal, P.C.

Signature / Firma:   _____

Date / Fecha:                    December 12, 2023

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

catalina@csmlegal.com

November 29, 2023

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Marcos Oliver Aguilar

Legal Representative / Abogado:    CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                     29 de Noviembre 2023

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

January 30, 2025

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Rafael Basurto De La Cruz

Legal Representative / Abogado:    CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                    30 de Enero 2025

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.
### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

February 2, 2024

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                       Valentin Aparicio

Legal Representative / Abogado:      CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                        February 2, 2024

*Certified as a minority-owned business in the State of New York*